JOHN C. HARRIS, Respondent, *v.* GERTRUDE J. HARRIS and THE FORT MILLER PULP AND PAPER COMPANY, Appellants, Impleaded with MARY C. HARRIS.

*Parties to an action for partition — when the grantor of the present owners should be made a party.*

Where one of several tenants in common of a tract of land conveys to a third person her interest in a portion thereof, by a deed describing the premises. conveyed as "all that parcel or lot of land known as the Harris mill lot. * * * together with all riparian and water rights of every nature thereto appertaining," and it is necessary to resort to evidence outside of the deed to fix the exact boundaries of the premises, the grantor in the deed or her heirs. are necessary parties to an action to partition the parcel conveyed.

APPEAL by the defendants, Gertrude J. Harris and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 11th day of January, 1902, upon the decision of the court, rendered after a trial at the Saratoga Special Term, fixing the boundaries of land described in a deed from Jennie Sherman to the Fort Miller Pulp and Paper Company, and declaring the interests of all parties therein and directing the sale thereof to effect a partition.

*Henry W. Williams,* for the appellant Gertrude J. Harris.

*C. H. Sturges,* for the appellant the Fort Miller Pulp and Paper Company.

*Charles C. Lester* and *John C. Harris,* for the respondent.

KELLOGG, J. :

The lands sought to be partitioned were formerly owned by one John Harris; upon his decease in 1862 they became the property of his children, John C. Harris, William A. Harris, Mary Eliza Billings. and Gertrude Jeanette Harris. William A. Harris died unmarried and intestate in 1867; Mary Eliza Billings died intestate in 1878, leaving one child, Jennie Billings, who married John Sherman. The whole property was owned in common by these heirs until 1897, when Jennie Sherman conveyed her interest in some part of the lands to

the Fort Miller Pulp and Paper Company. The deed bears date August 30, 1897, and the difficulty which the case presents arises over the description of the premises conveyed. It is not claimed that the interest of Jennie Sherman in the entire tract was sold to this company, but that portion of the tract which is included in the following description : "All her right, title and interest (being an undivided one-fourth interest subject to the life estate of Mary C. Harris) in and to all that parcel or lot of land known as the Harris mill lot or property situated in the town of Northumberland, Saratoga County, New York, at or about the westerly end of the dam extending across the Hudson River from and about opposite to the village of Fort Miller aforesaid, and abutting upon the premises hereby sought to be conveyed, which dam is now owned and operated by the party of the second part, together with all riparian and water rights of every nature thereto appertaining; being property of which John Harris (the maternal grandfather of the first party) died seized in or about the year 1862." By this description the grantor has purposely avoided metes and bounds, and has adopted very general language which must be interpreted to embrace what in the minds of the parties was known in 1897 as all of the Harris mill property near the dam of the party of the second part and all water and riparian rights appertaining. There is no mill site or lot or property or water rights reserved. The expressed consideration for this one-fourth interest is $3,500. That the grantor intended to convey some valuable mill property must be conceded. And the broad language of the description should be interpreted to embrace all the potential mill property in that locality which can reasonably be covered by the language used, "Harris mill lot," or "Harris mill property," so called or known in 1897, including all riparian and water rights. At the date of this deed no mill existed on this property. Some mills had existed there prior to 1862, a grist mill, plaster mill, saw mill and planing mill. There had been a ditch or flume, one or more, leading from a wing dam above the mills and a tail race to convey the water back to the river. Part of the land above the mill to the north line of the tract owned by John Harris had been flooded by the wing dam, and the remaining portion had been used for piling lumber, etc., and the whole was so appropriated for mill uses. Various houses had been built to accommodate the

business done at the mill, including a wharf on the river bank; a road ran along the west side by which the mill property was reached. If the description in the deed were interpreted to include a piece bounded on the north by the north bounds of the tract, west by the road, east by the river, and south by a line running from the road to the river far enough south to include the tail race, and all the water rights, such interpretation would seem to express the intention of the parties. This at least presents a reasonable interpretation commensurate with the consideration paid and the uses to which such lands had been devoted when in the lifetime of John Harris the property was used. So far as the record shows, nothing less than this would seem to have been in the minds of the parties to this deed. The maps offered in evidence have little or no value in aid of the interpretation of the deed. It is not shown that either of the parties had any knowledge of the maps, and it is reasonable to suppose that had they intended to be governed by such maps, or any map, some reference would have been made to them in the deed.

There is, however, enough of uncertainty as to the exact boundaries to require the presence in court of the grantor or her heirs to make a binding determination as to such boundaries. It is obvious that no boundaries can be judicially determined that would settle the question without the presence of all parties in interest. The heirs of Jennie Sherman are interested in the remaining property out of which this piece is carved, and it would seem in this case to be necessary that these heirs should be present in court to protect their interests and to enable the court to decree the partition and sale of a certain parcel of land. Without the presence of these heirs of Jennie Sherman it is obvious that the limits of the parcel to be partitioned or sold must remain uncertain, and the decree in such a case at best would be ambulatory. A partition under such a decree would be ineffectual and a sale would not carry a marketable title to any particular lands. The case is novel and the cause is traceable to the necessity of resorting to evidence outside of the deed itself to fix the exact location and limits of the lands deeded. That such evidence should be resorted to would seem to have been in contemplation of the parties to the deed from the language used in describing the property. It is to us apparent that this action in

partition cannot be maintained unless these heirs can be made parties. And it would seem quite within the equity powers of the court to bring them in and in this action to determine the location and exact boundaries of this property. We see no serious difficulties in such procedure. This determination is a necessary preliminary to an effectual decree. It is difficult to see in what other way the question can be determined and the determination made binding on these heirs. If an action preliminary to partition is suggested, what sort of an action? There is no mistake in the description open to correction. There are no grounds for the action of ejectment for the lands are owned in common. The common owners with the Fort Miller Pulp and Paper Company in this parcel are common owners with the heirs of Jennie Sherman in the remaining portion of the tract.

The judgment, therefore, should be reversed, with costs to appellants. The further proceedings should be stayed for a sufficient time to enable plaintiff to bring in by supplemental summons and complaint the heirs of Jennie Sherman and to enable any and all the parties by proper pleading to contest with such heirs the question of the proper location and boundary of the land described in the before-mentioned deed, to the end that the land directed to be partitioned or sold may be ascertained and determined with reasonable certainty.

All concurred ; FURSMAN, J., not voting.

Judgment reversed on law and facts, with costs to appellant.*
Further proceedings stayed as per opinion.

---

\* *Sic.*